UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NICOLE GATES,

               Plaintiff,

     v.

NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION,

               Defendant.

MEMORANDUM & ORDER
24-CV-5310 (NRM)

---

NINA R. MORRISON, United States District Judge:

Plaintiff Nicole Gates, proceeding *pro se*, brings this action against the New York City Human Resources Administration (the "HRA" or "Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq.*  She alleges race, age, and disability discrimination, and retaliation.

Presently before the Court is Defendant's motion to dismiss for failure to state a claim.  For the reasons that follow, Defendant's motion is granted as to Plaintiff's age and disability discrimination claims, and the motion is denied as to Plaintiff's race discrimination and retaliation claims.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from the Amended Complaint, Amended Compl. ("FAC"), ECF No. 17, and they are taken as true for the purposes of the instant

1

motion.  *See Dorking Genetics v. United States*, 76 F.3d 1261, 1263 (2d Cir. 1996).

Plaintiff Nicole Gates is a Black woman who began her employment with HRA Medicaid, Department of Social Services in Brooklyn, New York in April of 2018.  FAC at 2.[1]  Gates's immediate supervisor from 2021 to 2023, Marina Markovic, was a white Russian woman.  *Id.*  "During a significant amount of this time," Gates was the only Black employee in her unit of five, with all others in the unit also being of Russian descent.[2]  *Id.*  Gates alleges that throughout her time at HRA, she was "excluded from assignments, given lesser assignments, assigned subpar and less favorable work compared to colleagues and spoken to in a derogatory tone compared to her colleagues."  *Id.*

The Complaint details a range of misconduct on the part of Gates's coworkers and supervisors.  For example, Gates was "consistently given menial or less challenging tasks while Russian employees in similar roles [we]re assigned substantive, higher-profile responsibilities."  *Id.*  She was excluded from overtime opportunities, with shifts "disproportionately assigned to the Russian employees, despite [Gates] expressing interest and availability."  *Id.*  Markovic and the other coworkers frequently communicated in Russian, including in team meetings, "internally excluding [Gates] from conversations critical to performing [her] job effectively."  *Id.* at 3.  Finally, Gates was described or publicly criticized as being

---

[1] Unless otherwise indicated, all page references use the pagination provided by the Electronic Case Filing System.

[2] It is unclear from the papers whether Markovic is included in the "Unit of 5" as described in the Complaint.

"aggressive" or "intimidating," which Gates alleges were racially charged terms. *Id.*

One particular incident referenced in the Complaint is described in Gates's formal Equal Employment Opportunity ("EEO") Complaint of Discrimination alleging age discrimination. *See* Def. Decl. in Supp. of Mot. to Dismiss, Ex. B ("EEO Complaint") at 3–4, ECF No. 32-2.[3] On September 21, 2022, Gates received an email and a Microsoft Teams message indicating that her request for overtime had been denied. *Id.* at 4. She went to speak with Director Monica Brown about why the request had been denied, but Brown was on the phone at the time and motioned for her to have a seat. *Id.* Gates then asked her coworker Roberto Sanchez, who was also in the room and had been included in the email chain, if he could pull up the Teams message. Sanchez "replied in an aggressive manner IM BUSY!" *Id.* When Gates attempted to explain that she wanted to make sure they were on the same page regarding the overtime messages, Sanchez "jumped up and [belligerently] began yelling in [her] face get away from my desk." Gates "felt threatened and afraid by [Sanchez's] hostile behavior." *Id.* Sanchez then "proceeded to call [Gates] old and [made] comments in reference to [her] age," saying that she was "too old." *Id.*

Gates called security and reported Sanchez for his hostile behavior. FAC at 17. According to a security incident report prepared by an HRA police officer, HRA arrived and escalated the issue to the New York Police Department ("NYPD"). FAC

---

[3] Gates did not attach her full EEO complaint form to her Amended Complaint. However, the Complaint discusses the EEO complaint at length, *see* FAC at 3–5, and a court may consider "documents incorporated by reference in the complaint" in considering a motion to dismiss. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

at 18.  When NYPD arrived, they spoke to two HRA Directors and informed them that Sanchez was "not to have contact with [Gates]."  *Id.*  They then left without further incident.  *Id.*  Gates disputes that the security incident report accurately reported the incident and notes that it did not include the substance of her own statements that she submitted, as well as a statement from a co-worker witness.  FAC at 17.  However, Gates has not provided those statements to the Court.

The following day, on September 22, 2022, Gates filed a formal complaint with the EEO regarding this incident, alleging age and race discrimination.  FAC at 3, 16.  Following the complaint, she emailed various individuals in the EEO office requesting an immediate transfer from her unit, noting that she was being "harassed, bullied[,] threatened[,] and intimidated" by her managers and coworkers, and that the resulting environment was having "a major effect on [her] livelihood, mental and physical health."  FAC at 12, 14 & 15.  There is no indication that Gates was ever transferred, and the complaint was determined unsubstantiated on March 20, 2023.  FAC at 11.

After filing the EEO complaint, Gates "experienced a series of retaliatory actions by [her] supervisor, Markovic, Directors[] Bernadette Brown and Monica Brown, and other supervisors including Lisa Bryant and Nancy Rosa, HRA Police including the captain Wanda Carrington."  FAC at 3.  Gates was subjected to "unwarranted charges and formal complaints about [her] performance and conduct."  *Id.* at 4.  She was targeted with increased scrutiny by supervisors "at a level that was unprecedented prior to [her] EEO filing," including for things that were overlooked

for other employees. *Id.* She was given reduced opportunities and assignments, including "menial mail jobs that [we]re out of [her] title of work." *Id.* at 5. And she was removed from her "Grievance Representation" position with the union "due to disciplinary charges brought [forth] after assignment." *Id.* In October 2023, Gates was suspended due to "baseless and inconsistent" charges. *Id.* at 4. It is unclear from the parties' papers the nature or purported basis of this suspension, and for how long it lasted.

Gates avers that because of this work environment, she suffered "severe stress, anxiety, and depression, which substantially limit[ed] major life activities." *Id.* at 5. In March 2023, Gates was hospitalized due to these conditions, and she engaged in ongoing therapy and mental health care from November 2023 to March 2024. In March 2024, Gates was evaluated by Dr. Felix Ellis, a psychiatrist, who recommended that she take medical leave. *Id.* In April 2024, Gates went on medical leave and submitted a letter from Dr. Felix asking for reasonable accommodation in the form of a transfer. *Id.* at 6, 10. The request was denied, and Gates returned to work that summer. *Id.* at 6. She resumed therapy in September 2024, and on January 2025, was again placed on medical leave for "extreme depression and anxiety." *Id.*

On January 19, 2024, Gates filed a formal charge of discrimination with the EEOC. Def. Decl. in Supp. of Mot. to Dismiss, Ex. A ("Charge of Discrimination") at 2, ECF No. 32-1. She received the dismissal of the charge and notice of her right to sue on April 30, 2024. FAC at 9.

## II.      Procedural History

Gates, proceeding *pro se*, filed the instant action on July 25, 2024 against "New York City-Human Resources Administration."  Compl., ECF No. 1.  On October 31, 2024, Defendant moved for a pre-motion conference for a motion to dismiss.  Letter re: Def.'s Intention to File Mot. to Dismiss, ECF No. 13.  In response, Gates requested leave to file an amended complaint, which this Court granted.  Order granting Mot. for Extension of Time to File Amended Compl. dated December 16, 2024.  On January 16, 2025, Gates filed the Amended Complaint, alleging race, age, and disability discrimination, retaliation, and a hostile work environment under Title VII, ADEA, and the ADA.  This motion to dismiss followed.  Mot. to Dismiss ("Mot"), ECF No. 31.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Because Plaintiff is *pro se*, the Court construes her pleadings liberally and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).  Though a court must accept a plaintiff's well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

6

## I.    HRA as a Non-Suable Entity

As a threshold matter, Defendant argues that Plaintiff's claims should be dismissed because the named defendant is the HRA, which is not a suable entity under Section 396 of the New York City Charter.  Mem. in Supp. of Mot. to Dismiss ("Def. Mem.") at 13–14, ECF No. 33; *see Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2007); N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of the penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency . . . .").

However, it is unclear whether Plaintiff intended to designate HRA or the City as the defendant.  The Amended Complaint lists "New York City Human Resource Administration - DSS" as the defendant in the case caption.  FAC at 1.  Additionally, in the caption of her initial complaint, Plaintiff wrote "NYC-HRA," "New York City," and "Human Resource Administration" in the lines provided for naming the defendants.  Compl. at 1.  Though the Court does not consider the allegations contained in this superseded complaint in evaluating the merits of the pleadings, *see Lopez v. Cajmant LLC*, No. 15-CV-593 (ENV), 2020 WL 9814059, at *5 n.7 (E.D.N.Y. Oct. 26, 2020), the initial caption provides context for interpreting Plaintiff's designation of the appropriate defendant.

Finally, courts in this circuit have, in the past, suggested that claims against the HRA may be evaluated by construing the claims as being made against the City. *See, e.g., Shamilov v. Hum. Res. Admin.*, No. 10-CV-8745, 2011 WL 6085550, at *5 (S.D.N.Y. Dec. 6, 2011); *Rojas v. Hum. Res. Admin.*, No. 18-CV-6852 (KAM), 2022 WL

3716851, at *6 (E.D.N.Y. Aug. 29, 2022), *aff'd*, No. 22-2055, 2023 WL 6380820 (2d Cir. Oct. 2, 2023).  Given that Plaintiff has plausibly raised these claims against either New York City or the HRA, and the Plaintiff is *pro se*, the Court construes the action as being brought against New York City, a proper defendant.[4]

The Court now considers each of Plaintiff's claims.

## II.   ADA Claim

Plaintiff claims that Defendant denied reasonable accommodation for her various mental health conditions as required by the ADA.  However, this claim is unexhausted.  "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the . . . [ADA's] statutory scheme[] and, as such, a precondition to bringing such claims in federal court." *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 177 (S.D.N.Y. 2023) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)).  Here, Plaintiff's charge to the EEOC includes only allegations of race and age discrimination, and retaliation. *See* Charge of Discrimination at 2.

Nevertheless, "[c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).  "A claim is considered reasonably related if the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the

---

[4] To the extent that this issue remains a live dispute between the parties after this Order is issued, the Court *sua sponte* grants Plaintiff leave to amend her Complaint to designate "City of New York" as the defendant in the case caption.

charge' that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60, (2d Cir. 2001) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993)).

Plaintiff's claim that she was denied a reasonable accommodation as required by the ADA may be "reasonably related" to her other discrimination claims, given that Plaintiff's accommodation request — a transfer to a different unit — appears to be a result of her alleged discriminatory workplace environment. *See generally* FAC at 2–6. However, based on her pleadings, Plaintiff only made her reasonable accommodation request when she took medical leave in April 2024, *after* the complaint and charge with EEOC had already been filed. *Id.* at 6. In other words, Plaintiff was not subject to the alleged discriminatory action under the ADA until after her formal EEOC claim.

Generously construed, it is possible to interpret Plaintiff's earlier, informal requests for transfers directed towards various individuals in the HRA as requests for accommodation. However, Plaintiff never alleges that she made known to these individuals that she was suffering from a disability, a required element of an ADA claim. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003). Some of the attachments to her complaint show that Plaintiff expressed, with strong language, the hostile and harassing environment allegedly created by her supervisors and coworkers, *see, e.g.*, FAC at 12, 14 & 15, but "[j]ob-related stress — particularly that caused by working with a particular supervisor — is not considered a disability under the ADA" and is thus insufficient to provide proper notice for a defendant. *Chang v.*

*MetroPlus Health Plan*, No. 12-CV-3181 (WHP), 2014 WL 842635, at *6 (S.D.N.Y. Mar. 4, 2014) (quoting *Thompson v. Fed-Reserve Bank of New York*, No. 01-CV-11640 (DC), 2004 WL 330243, at *8 (S.D.N.Y. Feb. 23, 2004)), *aff'd*, 590 F. App'x 74 (2d Cir. 2015); *see also Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1062 (7th Cir. 2000) ("Standing alone, a personality conflict between an employee and a supervisor — even one that trigger[]s the employee's depression — is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor.").

Plaintiff's ADA claim is thus not exhausted.  Defendant's motion to dismiss is granted as to that claim.

## III.    Age Discrimination

On the other hand, Plaintiff's age discrimination claim has been exhausted, but must be dismissed on other grounds.

First, this claim is time-barred.  "To sustain a claim for unlawful discrimination under Title VII and/or the ADEA, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2).  Because Plaintiff filed her charge of discrimination on January 19, 2024, Charge of Discrimination at 2, the alleged discriminatory act or acts must have taken place sometime on or after March 25, 2023.

To be sure, "[a] statute of limitations is an affirmative defense that need not be addressed in the complaint, and plaintiffs are not required to allege facts in their

10

complaint to rebut a potential statute of limitations affirmative defense that might be waived." *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 334 (N.D.N.Y. 2023) (internal quotation marks omitted) (quoting *Kattu v. Metro Petroleum, Inc.*, No. 12-CV-54, 2013 WL 4015342, at *4 (W.D.N.Y. Aug. 6, 2013)). But a defendant may nevertheless raise such a defense in a motion to dismiss where the "failure is apparent from the face of the complaint." *Kane v. St. Raymond's Roman Catholic Church*, No. 14-CV-7028 (AJN), 2015 WL 4270757, at *5 (S.D.N.Y. July 13, 2015). Here, while Plaintiff alleges a range of misconduct on the part of the HRA, the only allegation related to *age* discrimination is the incident with her coworker Sanchez, which took place on September 21, 2022, well before the 300-day period under the ADEA.

Moreover, even generously construed, all of Plaintiff's other allegations of discrimination do not have any real connection to this sole instance of age discrimination. And as for the allegation of age discrimination itself, "[i]t is well-established that stray remarks alone will not support a Title VII discrimination suit." *Brooks v. Blank*, No. 10-CV-8124 (ALC), 2014 WL 1495774 (S.D.N.Y. Mar. 31, 2014) (citation modified); *see Ross v. State of New York*, No. 15-CV-3286 (JPO), 2016 WL 626561, at *5 n.5 (S.D.N.Y. Feb. 16, 2016); *Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016). Thus, even if the claim were not time-barred, Plaintiff does not allege sufficient facts to state a claim for age discrimination.

## IV. Race Discrimination

A. <u>Statute of Limitations</u>

11

Plaintiff also raises a claim of race discrimination.  Defendant first argues that this claim is also time-barred because most of the conduct described in the Complaint is undated, and the few dated incidents took place before the 300-day statute of limitations.  Def. Mem. at 14–16.

It is true that allegations based on undated conduct "are subject to dismissal based on untimeliness."  *Rojas v. Hum. Res. Admin.*, 2022 WL 3716851, at *7 (E.D.N.Y. Aug. 29, 2022).  However, as just noted, a statute-of-limitations claim is an affirmative defense that plaintiffs need not address in their complaint.  *Lalonde*, 662 F. Supp. 3d at 334.  And unlike with Plaintiff's age-discrimination claim, it is far from "apparent from the face of the complaint" that the adverse actions that Plaintiff identifies as racially motivated *all* took place prior to March 25, 2023.  *Kane*, 2015 WL 4270757, at *5.

The Amended Complaint alleges a range of allegedly discriminatory actions by Plaintiff's supervisors against Plaintiff, the only Black employee in her unit at all relevant times.  These include giving Plaintiff menial tasks, excluding her from overtime opportunities, excluding her from conversations and team meetings, and subjecting her to derogatory language.  *See* FAC at 2–3.  Defendant's only argument for why any of these allegations are time-barred is that none of these occurrences were given specific dates or times in the Complaint.

The Court is unpersuaded.  Plaintiff's *pro se* complaint is to be construed liberally, and there is contextual evidence from which the Court may draw a reasonable inference that much, if not all, of the described conduct was continuing at

12

or close to the time that Plaintiff filed her charge of discrimination in January 2024.

First, the factual background of the Amended Complaint begins by stating that Plaintiff was "subjected to racial discrimination by [her] immediate supervisor . . . from 2021 *through 2023*." FAC at 2 (emphasis added).  Next, the section of the Complaint addressing Plaintiff's retaliation claim describes some conduct that is similar or related to the conduct described for her race-discrimination claim.  *Compare* FAC at 2–3 (alleging that she was given "menial or less challenging tasks" and being subjected to a hostile work environment), *with id.* at 3–5 (alleging that she was "assigned fewer or less significant tasks" and supervisors "fostered a hostile environment").  And because Plaintiff's EEOC complaint was filed on September 22, 2022, Plaintiff has at least alleged that relevant discriminatory misconduct was taking place near the end of 2022.  Finally, in the section of the Complaint outlining Plaintiff's alleged disability status, Plaintiff notes that she was hospitalized in March 2023, engaged in ongoing therapy from November 2023 to the present, and that she took medical leave in April 2024 and January 2025, all stemming from ongoing discrimination in her workplace.  *See* FAC at 5–6.  That timeline gives rise to the inference that the allegations of race discrimination continued well into 2024 and the present day.  At the very least, it is not "apparent from the face of the complaint" that these actions or incidents did not continue past March 25, 2023.  *Kane*, 2015 WL 4270757, at *5.

B. <u>Merits</u>

The Court now addresses whether Plaintiff's pleadings adequately establish

an actionable race discrimination claim under Title VII.

1.  Standard of Review

Defendant correctly observes that employment discrimination claims under Title VII are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination by showing that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

However, in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), the Supreme Court noted that *McDonnell Douglas*'s *prima facie* case was "an evidentiary standard, not a pleading requirement," and that it was not to be "transposed into a rigid pleading standard for discrimination cases."  *Id.* at 506–07.  That holding was put into question when the Court updated the pleadings standard in *Iqbal*, but the Second Circuit has since "clarified that *Iqbal* does not require a plaintiff to plead a *prima facie* case."  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020).  "Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).

The plausibility standard is low, and "simply requires a plaintiff to 'assert

14

[enough] nonconclusory factual matter . . . to nudge [her] claim[] across the line from conceivable to plausible to proceed.'" *Mandala*, 975 F.3d at 208 (alterations in original) (quoting *EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014)). Additionally, because race must simply be *a* motivating factor in the employment decision, "a plaintiff in a Title VII case need not allege 'but-for' causation." *Vega*, 801 F.3d at 86. Plaintiff has sufficiently pleaded a claim for race discrimination under this standard.

2. Adverse Employment Action

Defendant first argues that none of the conduct described in Plaintiff's allegations amounts to a cognizable "adverse employment action." Def. Mem. at 21–23. "An adverse employment action occurs if an employee endures a materially adverse change in the terms and conditions of employment." *Scott-Monck v. Matrix Absence Mgmt., Inc.*, No. 19-CV-11798 (NSR), 2021 WL 4198242, at *4 (S.D.N.Y. Sep. 14, 2021) (internal quotation marks omitted) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)). Though there is "no exhaustive list of what constitutes an adverse employment action[,] [c]ourts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfers that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, can constitute adverse employment actions." *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 422 (E.D.N.Y. 2014) (quoting *Little v. NBC*,

15

210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002)).  And although adverse actions "may include lesser actions than those stated above[,] . . . such lesser actions must have the effect of changing 'the total circumstances of [the employee's] working environment . . . to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace.'"  *Id.* at 425 (quoting *Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002)).

Though many of the alleged actions identified in Plaintiff's complaint do not constitute adverse employment actions when viewed in isolation, taken together, Plaintiff has sufficiently pled this element of her claim.

Plaintiff's strongest allegation is that she was excluded from overtime opportunities despite expressing interest and availability.  Courts in this circuit regularly find that "denial of overtime can constitute an adverse employment action." *Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012); *see, e.g.*, *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 171–72 (E.D.N.Y. 2020); *Faggiano v. Eastman Kodak Co.*, 378 F. Supp. 2d 292, 306 (W.D.N.Y. 2005).  That alone is not dispositive, however, as courts frequently disagree on the severity and frequency of overtime denial necessary to rise to the level of an adverse action.  *Compare Mcloughlin v. Vill. of Southampton*, No. 23-CV-6586 (GRB), 2024 WL 4189224, at *3 (E.D.N.Y. Sep. 13, 2024) ("[I]solated or conclusorily alleged instances of overtimed denial are routinely rejected."), *and Como v. O'Neill*, 2002 WL 31729509, at *2 (S.D.N.Y. Dec. 4, 2002) (finding no adverse action where an employer "obviated the overtime opportunities plaintiff was used to . . . only for a short period."), *with*

*Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 314–15 (E.D.N.Y. 2014) (finding sufficient an allegation of a single instance of overtime denial).

But even taking into account the more stringent standard applied by some courts, Plaintiff's allegations sufficiently make out an adverse employment action. Though the Amended Complaint does not specify the number of instances of overtime denial or the amount of loss, it states that overtime shifts "are disproportionately assigned to the Russian employees," and that "[w]hen [Plaintiff] requests overtime, [she] [is] denied with vague reasons, while Russian employees in the same role are regularly scheduled for extra hours." FAC at 2. This suggests that denial of overtime was not a single isolated occurrence but was instead a "regular" one.

Furthermore, Plaintiff alleges other actions taken by her employer that provide context for understanding these denials as a "materially adverse change" in Plaintiff's terms and conditions of employment. *Raspardo v. Carlone*, 770 F.3d 97, 125–26 (2d Cir. 2014). For example, Plaintiff alleges that she was "consistently given menial or less challenging tasks while Russian employees in similar are assigned substantive, higher-profile responsibilities," and that she was excluded from conversations and team meetings because the communications were conducted in Russian. FAC at 2–3. *See Ahmad v. New York City Health & Hosp. Corp.*, No. 20-CV-675 (PAE), 2021 WL 1225875, at *20 (S.D.N.Y. Mar. 31, 2021) ("Significantly diminished material responsibilities can constitute an adverse employment action."); *Cruz v. Southerton*, No. 21-CV-6410 (NSR), 2023 WL 8810144, at *6 (S.D.N.Y. Dec. 20, 2023) (noting that an employer's creation of working conditions that are

17

"intolerable when, viewed as a whole," constitutes an adverse employment action).

In any case, courts regularly find that allegations of overtime denials establish an adverse employment action without details of other misconduct, *see, e.g.*, *Awad v. City of New York*, No. 13-CV-5753 (BMC), 2014 WL 1814114, at *3 (E.D.N.Y. May 7, 2014) ("[P]laintiff has also plausibly shown that he suffered an adverse employment action when [his employer] denied him overtime and compensatory time."); *Kohutka*, 994 F. Supp. 2d at 314–15 (finding that plaintiff adequately pled an adverse action even where there was "nothing to suggest that these overtime opportunities held any relation to [plaintiff]'s professional growth or to any career advancement"), and Plaintiff's case is distinguishable from the cases in which courts found that overtime denials did not rise to the level of an adverse employment action, *see, e.g.*, *James v. New York City Health + Hosps. Corp. Off. of Legal Affs. Claims. Div.*, No. 23-CV-1206 (PGG) 2024 WL 5508202, at *10 (S.D.N.Y. Mar. 13, 2025) (finding no adverse action where the pleadings were unclear as to whether plaintiff "simply did not ask for overtime hours"); *Mcloughlin*, 2024 WL 4189224, at *3–4 (finding no adverse action where "plaintiff only alleged one occasion when she was denied overtime[,] . . . which she admit[ted] was the first time such an incident occurred in over a decade of employment").

Plaintiff has therefore plausibly alleged that she suffered from an adverse employment action.

3.  Inference of Discrimination

Defendant next argues that Plaintiff fails to support an inference of

18

discriminatory intent.  Def. Mem. at 23–25.  At the pleadings stage, a plaintiff only needs to show that that "the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.

Plaintiff's pleadings fulfill that standard.  The Amended Complaint includes many allegations of disparate treatment on the basis of race, stating that Plaintiff, as the only Black employee in her unit, was given worse assignments, denied overtime, and excluded from meetings and conversations, while the same was not true of her Russian colleagues.  "[A] showing of disparate treatment[ is] a common and especially effective method of establishing the inference of discriminatory intent" in Title VII cases.  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001); *see Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Further, while Plaintiff does not present any direct evidence of discriminatory intent, she does note that at various points, both her supervisors and coworkers have used labels like "aggressive" or "intimidating" in describing her.  The Second Circuit has found that "racially charged code words may provide evidence of discriminatory intent" even without the use of "explicitly racial language."  *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 608–09 (2d Cir. 2016).  In any case, a plaintiff "do[es] not have to allege facts showing animus on the basis of race to survive a motion to dismiss for a disparate treatment claim.  [She] must only meet the 'minimal' burden of facts of showing the possibility of differential treatment, without direct evidence of

19

discrimination." *Xia v. 65 West 87th Street Hous. Dev. Fund Corp.*, No. 20-CV-03576 (ER), 2020 WL 7230961, at *7 (Dec. 8, 2020) (internal citation omitted). Here, that burden is particularly easy to uphold where Plaintiff has alleged that she was the only Black woman, and indeed, the only non-Russian person, in her unit.

Defendant argues that Plaintiff has failed to demonstrate one of the elements needed to establish a *prima facie* of discrimination — namely, that her Russian employees were "similarly situated in all material respects." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014); *see* Def Mem. at 24–25. However, the "similarly situated" question "presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." *Id.* While "it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated," *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019), here, Plaintiff has alleged that her Russian colleagues worked in the same unit, were in "similar" or the "same" roles, and reported to the same supervisor. That is more than enough at the pleadings stage.

Defendant's motion to dismiss is therefore denied as to Plaintiff's race discrimination claim.

## V.    Retaliation

To raise a claim of retaliation, plaintiff must plausibly allege "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Feingold v. New York*, 366 F.3d 138,

20

156 (2d Cir. 2004) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)).  Only the second and third elements are of concern here, as Defendant does not dispute that Plaintiff's EEOC complaint filed in September 2022 constitutes a protected activity known to Defendant.

1.  Adverse Action

The standard for an adverse action is much lower in the retaliation context than in the discrimination context.  The Supreme Court has held that an employer's action is materially adverse for retaliation purposes if "it well might have dissuaded a reasonable worker form making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted) (quoting *Rochon v. Gonzalez*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Plaintiff's allegations easily meet this standard.  The Amended Complaint states that following the EEO complaint, Plaintiff was subjected to unprecedented levels of scrutiny; suspended based on unwarranted charges and baseless complaints about her conduct; isolated from her colleagues at the direction of Director Brown; assigned fewer and more menial tasks outside of her title of work; and removed from her Grievance Representation position with the union.  FAC at 3–5; *see Wilkinson v. New York State*, 2019 WL 5423573, at *13 (E.D.N.Y. Oct. 22, 2019) ("[A] reasonable employee could be dissuaded from making a charge of discrimination if doing so would result in being relegated to work normally performed by more junior employees."); *Klaes v. Jamestown Bd. of Pub. Utilities*, No. 11-CV-606, 2013 WL 1337188, at *8 (W.D.N.Y. Mar. 29, 2013) ("[C]ourts in this circuit have concluded that the filing of

21

charges which results in suspensions or other types of discipline constitutes an adverse employment action sufficient to support claims of discrimination or retaliation.").

### 2. Causal Connection

A causal connection for retaliation "may be established by (1) 'evidence of retaliatory animus directed against a plaintiff by the defendant'; or (2) a close temporal proximity between the protected activity and the adverse employment action." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) (quoting *DeCintio v. Westchester Cnty. Medical Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). "The ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002); *see also Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994) ("The motive behind [plaintiff's] firing in his retaliation claim is clearly a question of fact. Because this question is in dispute, it was improper for the district court to answer it on a motion for dismissal on the pleadings."). As such, at the pleadings stage, "[i]t is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Dougherty*, 282 F.3d at 91.

Plaintiff has sufficiently alleged such facts. The Amended Complaint directly ties many of the allegations of retaliatory conduct to the filing of Plaintiff's EEOC complaint. Plaintiff alleges that: "*[a]fter reporting discrimination*, [she] was subjected to unwarranted charges and formal complaints about [her] performance

22

and conduct"; "[s]upervisors began scrutinizing [her] work at a level that was *unprecedented prior to [her] EEO filing*"; her "Grievance Representative position with the Union was revoked with the claim *due to disciplinary charges brought [forth] after assignment*"; and she was "assigned fewer or less significant tasks *since filing [her] EEOC complaint.*" FAC at 4–5 (emphases added).

Defendant focuses only on the temporal-proximity prong, noting that Plaintiff's allegations are largely undated, and that the only dated incident — the October 2023 suspension — was too temporally distant from the protected activity to merit a presumption of retaliation. Def. Mem. at 27–28. But "evidence of an ongoing pattern of retaliatory conduct and intent can also establish a causal connection" absent such proximity. *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 131 (E.D.N.Y. 2011) (quoting *Shub v. Westchester Cmty. College*, 556 F. Supp. 2d 227, 246 (S.D.N.Y. 2008)); *see also Econ. Opportunity Comm'n of Nassau Cnty., Inc. v. Cnty. of Nassau*, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000) ("[A] plaintiff can also show retaliatory intent by establishing unequal treatment, or an ongoing campaign of adverse action.").

Plaintiff has thus sufficiently alleged "facts from which a retaliatory intent on the part of the [Defendant] reasonably may be inferred." *Dougherty*, 282 F.3d at 91. The motion to dismiss is denied as to Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted as to Plaintiff's ADA and age discrimination claims. The motion is denied as to Plaintiff's

race discrimination and retaliation claims.

/s/ Nina R. Morrison
NINA R. MORRISON
United States District Judge

Dated:      February 25, 2026
                Brooklyn, New York